UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL ERDE and SUSANNE ERDE, as Parents and
Natural Guardians of J.E., and MICHAEL ERDE and
SUSANNE ERDE, Individually,

Plaintiffs,

-against-

MEISHA PORTER, in her Official Capacity as
Chancellor of the New York City Department of
Education, and THE NEW YORK CITY
DEPARTMENT OF EDUCATION,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT, AND IN SUPPORT OF
DEFENDANTS' CROSS-MOTION**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Min Kyung Cho*
*Tel: (212) 356-0872*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATUTORY FRAMEWORK............................................................................................. 2

STATEMENT OF FACTS ................................................................................................... 4

STANDARD OF REVIEW .................................................................................................. 8

                A. Generally ............................................................................................... 8

                B. Application of the *Burlington/Carter* Test............................................ 11

ARGUMENT ....................................................................................................................... 11

                POINT I ......................................................................................................... 11

                Both the IHO and SRO Correctly Concluded That
the Equities Do Not Favor Plaintiffs............................................................ 11

                A. The SRO Properly Applied a Reduction
to Plaintiffs' Tuition Reimbursement ........................................... 11

                B. The SRO Properly Found that Plaintiffs
Failed to Meet Their Burden and Are Not
Entitled to Direct Funding .......................................................... 17

CONCLUSION.................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Pages**

*Bd. of Educ. of Henrick Hudson Cent. Sch. Dist. v. Rowley*,
    458 U.S. 176 (1982)......................................................................................2, 8, 9, 10

*Bettinger v. NYC Bd. of Educ.*,
    No. 06-6889, 2007 U.S. Dist. LEXIS 86116, 2007 WL 4208560 (S.D.N.Y.
    Nov. 20, 2007) ...................................................................................................12

*C.F. v. N.Y. City. Dep't of Educ.*,
    746 F.3d 68 (2d Cir. 2013).................................................................................10

*Carmel Cent. Sch. Dist. v. V.P.*,
    373 F. Supp. 2d 402 (S.D.N.Y. 2005).............................................................13, 14

*Cerra v. Pawling Cent. Sch. Dist.*,
    427 F.3d 186 (2d Cir. 2005)...............................................................................2, 9

*Connors v. Mills*,
    34 F. Supp. 2d 795 (N.D.N.Y. 1998)...................................................................17

*E.M. v. N.Y. City Dep't of Educ.*,
    758 F.3d 442 (2d Cir. 2014)................................................................................19

*F.B. v. N.Y.C. Dep't of Educ.*,
    923 F. Supp. 2d 570 (S.D.N.Y. 2013).................................................................9

*Florence Cnty. Sch. Dist. Four v. Carter by & Through Carter*,
    510 U.S. 7 (1993)..........................................................................................3, 4, 10

*Forest Grove Sch. Dist. v. T.A.*,
    557 U.S. 230 (2009)...........................................................................10, 11, 12, 13

*Frank G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*,
    459 F.3d 356 (2d Cir. 2006)...............................................................................10

*Gagliardo v. Arlington Cent. Sch. Dist.*,
    489 F.3d 105 (2d Cir. 2007)...............................................................................10

*J.L. v. N.Y. City Dep't of Educ.*,
    No. 15-1200, 2016 U.S. Dist. LEXIS 162328, 2016 WL 6902137 (E.D.N.Y.
    Nov. 22, 2016) ...................................................................................................16

*J.P. v. N.Y. City Dep't of Educ.*,
    No. 10-3078, 2012 U.S. Dist. LEXIS 12762, 2012 WL 359977 (E.D.N.Y. Feb.
    2, 2012) ..............................................................................................................12

*K.L. v. N.Y.C. Dep't of Educ.*,
No. 11-3733, 2012 U.S. Dist. LEXIS 124460, 2012 WL 4017822 (S.D.N.Y.
Aug. 23, 2012), *aff'd*, 530 F. App'x 81 (2d Cir. 2013)............................................9

*M.C. v. Voluntown Bd. of Educ.*,
226 F.3d 60 (2d Cir. 2000)..........................................................................10, 14

*M.H. v.N.Y.C. Dep't of Educ.*,
685 F.3d 217 (2d Cir. 2012), *aff'd*, 530 F. App'x 81 (2d Cir. 2013)....................8, 9

*M.N. v.N.Y.C. Dep't of Educ.*,
700 F. Supp 2d 356 (S.D.N.Y. 2010).................................................................2

*M.S. v. Yonkers Bd. of Educ.*,
231 F.3d 96 (2d Cir. 2000)...............................................................................8

*M.W. v. N.Y.C. Dep't of Educ.*,
725 F.3d 131 (2d Cir. 2013)...........................................................................8, 9

*Mr. v. Mrs. A v. New York City Dep't of Educ.*,
769 F. Supp. 2d 403 (S.D.N.Y. 2011).......................................................17, 18, 19

*Muller v. Comm. on Special Educ.*,
145 F.3d 95 (2d Cir. 1998)...............................................................................10

*N.R. v. N.Y.C. Dep't of Educ.*,
No. 07-9648, 29 U.S. Dist. LEXIS 27273, 2009 WL 874061 (S.D.N.Y. Mar.
31, 2009) ..........................................................................................................11

*R.E. v. N.Y.C. Dep't of Educ.*,
694 F.3d 167 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2802 (2013) ...................8, 9, 10, 11, 16

*Sch. Comm. Of Burlington v. Dep't of Educ.*,
471 U.S. 359 (1985)...........................................................................................4

*S.W. v. New York City Dep't of Educ.*,
646 F. Supp. 2d 346 (S.D.N.Y. 2009)...........................................................13, 14, 15

*T.K. v. New York City Dep't of Educ.*,
32 F. Supp. 3d 405 (E.D.N.Y. 2014) ..................................................................2

*T.P. v. Mamaroneck Union Free Sch. Dist.*,
554 F.3d 247 (2d Cir. 2009)...............................................................................8

*Thies v. N.Y. City Bd. of Educ.*,
No. 07-2000, 2008 U.S. Dist. LEXIS 11354 (S.D.N.Y. Feb. 4, 2008)....................12

*Tucker v. Bay Shore Sch. Dist.*,
    873 F.2d 563 (2d Cir. 1989) ..............................................................................12

*Walczak v. Florida Union Free Sch. Dist.*,
    142 F.3d 119 (2d Cir. 1998) ....................................................................2, 4, 8, 9, 10

*Wood v. Kingston City Sch. Dist.*,
    No. 08-1371, 2010 U.S. Dist. LEXIS 102948, 2010 WL 3907829 (N.D.N.Y.
    Sept. 29, 2010) ..........................................................................................................12

## **Statutes**

8 N.Y.C.R.R. § 200.1(ww)(3)(i) ................................................................................3

8 N.Y.C.R.R. § 200.1(ww)(3)(i)(a) ...........................................................................3

8 N.Y.C.R.R. § 200.1(ww)(3)(i)(d) ...........................................................................3

8 N.Y.C.R.R. § 200.3 .................................................................................................2

8 N.Y.C.R.R. § 200.4(d)(2) .....................................................................................2, 3

8 N.Y.C.R.R. § 200.5(i) ............................................................................................3

8 N.Y.C.R.R. § 200.5(j) ............................................................................................3

8 N.Y.C.R.R. § 200.5(k) ...........................................................................................4

20 U.S.C. § 1400 .......................................................................................................2

20 U.S.C. § 1401(9) ..................................................................................................2

20 U.S.C. § 1412(a)(5)(A) ........................................................................................3

20 U.S.C. § 1412(a)(10)(C) .....................................................................................15

20 U.S.C. § 1412(a)(10)(C)(iii)(I) ...............................................................12, 15, 16

20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb) ..............................................................13, 14

20 U.S.C. § 1412(a)(10)(C)(iii)(III) ...............................................................10, 11, 12

20 U.S.C. § 1414(d)(1)(A)(i) ....................................................................................3

20 U.S.C. § 1414(d)(1)(B) ........................................................................................2

20 U.S.C. § 1415 .....................................................................................................17

20 U.S.C. § 1415(b)(6) ..............................................................................................3

20 U.S.C. § 1415(f)(1)(A)................................................................................3

N.Y. Educ. Law § 4402 .................................................................................1

N.Y. Educ. Law § 4404(1)(a) ........................................................................3

N.Y. Educ. Law § 4404(3)(a) ........................................................................4

## PRELIMINARY STATEMENT

Defendants, former Chancellor Meisha Porter and the New York City Department of Education ("DOE"), submit this memorandum of law in opposition to Plaintiffs' motion for summary judgment filed March 21, 2022 (ECF No. 18), and in support of Defendants' cross-motion for summary judgment filed April 20, 2022 (ECF No. 21).

By Complaint dated November 9, 2021 (ECF No. 1), Plaintiffs seek a reversal of an administrative decision issued by the New York State Education Department's Office of State Review ("SRO decision") which found that (1) equitable considerations warranted a $2,000.00 reduction of the tuition reimbursement award associated with J.E.'s (the "Student") private school education for the 2020-2021 school year; and (2) the cost of tuition and related services should be reimbursed to the Plaintiffs, instead of be directly funded to the Student's private school and providers. However, the State Review Officer ("SRO") correctly found that the administrative record does not support an award of direct funding, but instead reimbursement less $2,000.00, to Plaintiffs, as the equities do not weigh in their favor. Indeed, as explained more fully below, the administrative record demonstrates that Plaintiffs failed to cooperate with DOE's efforts to formulate an Individualized Education Program by providing inadequate and untimely notice of their intent to unilaterally withdraw their child from the public school and failed to demonstrate their financial hardship to warrant an award of direct funding. Thus, the SRO was correct to deny direct funding and to order a small reduction of the tuition reimbursement.

Accordingly, the Court should affirm the SRO's careful and well-reasoned decision, deny Plaintiffs' motion for summary judgment, and grant Defendants' cross-motion.

# STATUTORY FRAMEWORK

The Individuals with Disabilities Education Act ("IDEA") requires participating school districts to provide children with disabilities a "free appropriate public education" ("FAPE"). *See* 20 U.S.C. § 1400, *et seq.* A FAPE consists of special education and related services that are provided free of charge and in conformity with a written plan called an Individualized Education Program ("IEP"). *See* 20 U.S.C. § 1401(9). In New York, IEPs are formulated by local committees on special education, which are composed of the student's parents or guardians, a parent member,[1] a regular or special education teacher, a school board representative, and others designated by the school district or the parent as "persons having knowledge or special expertise regarding the student." *See* N.Y. Educ. Law § 4402; 8 N.Y.C.R.R. § 200.3; 8 N.Y.C.R.R. § 200.4(d)(2); 20 U.S.C. § 1414(d)(1)(B).

A student is offered a FAPE if (1) the student's IEP is developed in accordance with the IDEA's procedural requirements and (2) the educational plan set forth in the IEP is "reasonably calculated to enable the child to receive educational benefits." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 207 (1982). The educational plan need only provide a "basic floor of opportunity" and be more "likely to produce progress [than] regression." *Rowley*, 458 U.S. at 201; *T.K. v. New York City Dep't of Educ.*, 32 F. Supp. 3d 405, 417 (E.D.N.Y. 2014) (quoting *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 195 (2d Cir. 2005)). It need not "'maximize the potential of [disabled] children'" or provide "'everything that might be thought desirable by loving parents.'" *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 130 (2d Cir. 1998) (quoting *Rowley*, 458 U.S. at 196 n.21, 189).

---

[1] A parent member is a "parent of a child with a disability whose role at the IEP meeting is to provide support and information to the student's parents and advocate for the student's best interests." *M.N. v. N.Y.C. Dep't of Educ.*, 700 F. Supp. 2d 356, 366 n.11 (S.D.N.Y. 2010).

In developing an IEP, committees must, among other things, consider the student's (i) "academic achievement, functional performance and learning characteristics,"[2] (ii) social development, and (iii) management needs.[3] *See* 8 N.Y.C.R.R. § 200.1(ww)(3)(i). To the extent possible, committees must also seek to educate the child with children who are not disabled—that is, in the student's "least restrictive environment." 20 U.S.C. § 1412(a)(5)(A).

The IEP must contain a statement of the child's present levels of academic achievement and functional performance, a statement of measurable annual goals designed to meet the child's needs, and a statement of the special education and related services to be provided to help the child advance toward those annual goals. *See* 20 U.S.C. § 1414(d)(1)(A)(i); 8 N.Y.C.R.R. § 200.4(d)(2).

If a student's parents believe their child was not offered a FAPE, they may unilaterally enroll their child in a private school and later seek to recover tuition costs through an administrative proceeding, though they do so at their own financial risk. *Florence Cnty. Sch. Dist. Four v. Carter by & Through Carter*, 510 U.S. 7, 15 (1993). To initiate the proceeding, the parents must file a due process complaint enumerating their challenges to the IEP and request an impartial hearing. *See* 20 U.S.C. § 1415(b)(6); 20 U.S.C. § 1415(f)(1)(A); N.Y. Educ. Law § 4404(1)(a); 8 N.Y.C.R.R. § 200.5(i); 8 N.Y.C.R.R. § 200.5(j).

---

[2]     The phrase "academic achievement, functional performance and learning characteristics" refers to "the [student's] levels of knowledge and development in subject and skill areas, including activities of daily living, level of intellectual functioning, adaptive behavior, expected rate of progress in acquiring skills and information, and learning style." 8 N.Y.C.R.R. § 200.1(ww)(3)(i)(a).

[3]     The term "management needs" is defined as "the nature of and degree to which environmental modifications and human or material resources are required to enable the student to benefit from instruction." 8 N.Y.C.R.R. § 200.1(ww)(3)(i)(d).

An impartial hearing officer ("IHO"), who presides over the hearing, will receive evidence, hear testimony, and then issue a decision as to whether the parents are entitled to funding. Parents are entitled to funding only if (1) the district's recommended program did not constitute a FAPE for the child; (2) the private educational services obtained by the parents were appropriate to meet the child's needs; and (3) the equities support the parents' claim for relief. These three factors, which are discussed in greater detail below, comprise the *Burlington/Carter* test. *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985); *Carter*, 510 U.S. at 12-13; *Walczak*, 142 F.3d at 129. If the IHO determines that the district offered the child a FAPE, then the IHO need not address the remaining two prongs because the parents will not be entitled to funding as a matter of law.

Either party can appeal an unfavorable decision by an IHO to the New York State Education Department's Office of State Review. *See* 8 N.Y.C.R.R. § 200.5(k). At this second level, a state review officer will independently review the hearing record and issue a final administrative decision. *Id.* The parent can further appeal the final administrative decision by bringing an action in state or federal court. *See* 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3)(a); 8 N.Y.C.R.R. § 200.5(k).

## STATEMENT OF FACTS

Defendants respectfully refer the Court to their Responses to Plaintiffs' Local Civil Rule 56.1 Statement of Facts, dated April 20, 2022 (ECF No. 23) (hereinafter "Def's Responses") and Defendants' Local Civil Rule 56.1 Statement of Material Facts Not in Dispute in Support of Their Cross-Motion, dated April 20, 2022 (ECF No. 24) (hereinafter "Def's 56.1 Statement"), for a detailed recitation of the material facts relevant to their cross-motion. Included below is a brief summary of those facts.

J.E. (the "Student") is a student who has been classified as a student with educational disabilities. *See* Def's Responses, ¶¶ 2-8. On June 3, 2019, a DOE Committee on Special Education ("CSE") convened a meeting to develop an Individualized Education Plan ("IEP") for J.E. *See* Def's 56.1 Statement, ¶ 1. Plaintiffs, however, refused to participate in this meeting. *Id.* ¶ 2. On April 30, 2020, the International Institute for the Brain ("iBrain"), a private school, created its own private IEP for J.E. (the "April iBrain IEP"). *Id.* ¶ 3. Thereafter, a CSE reconvened on May 7, 2020, which made additional recommendations for J.E., and developed another IEP (hereinafter "May 2020 IEP"). *Id.* ¶ 4. The May 2020 IEP indicates that the father of J.E. expressed his preference that J.E. remain at iBrain and did not want J.E. to be placed in the previously recommended D75 school but that J.E.'s Parents were willing to visit any placement offered. *Id.* ¶ 5.

On or about June 29, 2020, Plaintiffs sent DOE a Ten-Day Notice ("TDN") for the 2020-2021 extended school year, informing DOE of their intent to unilaterally enroll J.E. at iBrain. Def's Responses, ¶ 14. The TDN was sent only one business day (three regular days) before the start of the DOE's District 75 ("D75") extended school year, which was to begin on July 1, 2020, and two business days before classes began on July 2, 2020. *See id.* ¶ 14.

On or about July 6, 2020, Plaintiffs filed a Due Process Complaint, in which they alleged the DOE denied the Student a FAPE for the 2020-2021 school year, and sought funding for the Student's placement at iBrain. *See id.* ¶ 18. The DOE issued a Prior Written Notice and a school location letter identifying a placement for J.E. on July 7, 2020. *See id.* ¶¶ 20, 21.

By Findings of Fact and Decision ("FOFD") dated May 1, 2021, the IHO determined that DOE did not provide J.E. a FAPE[4] for the 2020 summer session,[5] but that the Parents' chosen unilateral placement at iBrain was inappropriate for J.E. *Id.* ¶¶ 23, 25. In addition, the IHO noted in one sentence that "the equities disfavor neither side." *Id.* ¶ 26. As Plaintiffs did not satisfy the *Burlington-Carter* standard, the IHO accordingly denied the Parents' requested relief and dismissed the DPC in its entirety. *Id.* ¶ 27.

Plaintiffs subsequently appealed the IHO's FOFD to the Office of State Review and sought to reverse the IHO's findings in its entirety on the grounds that the IHO erred by (i) failing to find the Parents' chosen placement was appropriate; and (ii) failing to find that the equitable considerations favored the Parents' claim for reimbursement of tuition and all related services. *Id.* ¶ 28.

By Decision dated July 9, 2021 ("SRO Decision"), a State Review Officer ("SRO") found that the Parents' unilateral placement at iBrain for the 2020-2021 school year was appropriate and the IHO's denial of tuition reimbursement to the parents should be reversed. *Id.* ¶¶ 31, 34; *see id.* Def's 56.1 Statement, ¶ 9.

With respect to the equitable considerations, however, SRO determined that the IHO erred by failing to address equitable considerations and, in particular, noted how the IHO provided no factual analysis at all in finding that the equities disfavored neither side. Def's 56.1 Statement, ¶ 10. The SRO laid out, in great detail and over several pages, why the equities did not favor Plaintiffs. *Id.* ¶ 11. First, the SRO determined that the hearing record establishes that

---

[4] The IHO made such finding despite, the SRO noted in his decision, the DOE conceding FAPE on Prong I. *See* Def's Responses, ¶¶ 23, 31.

[5] The Student only attended iBrain for the 2020 summer session of the extended 2020-2021 school year because the student relocated out of state thereafter and stopped attending iBrain. *See id.* ¶ 10; *see also* Def's 56.1 Statement, ¶ 7.

DOE's extended school year began on July 1, 2020, with classes starting on July 2, 2020, and the program at iBrain began on July 6, 2020. *Id.* ¶ 12. However, Plaintiffs sent DOE a TDN on June 29, 2020, only one business day before the start of DOE's extended school year, thus failing to provide the statutorily-mandated ten business days advance notice of their intention to unilaterally place their child at iBrain. Def's Responses, ¶¶ 14, 17; *see* Def's 56.1 Statement, ¶ 12, 13. Thus, the SRO determined that equitable considerations weigh against an full award of tuition reimbursement to the Parents because they failed to comply with the ten-day notice requirement. Def's 56.1 Statement, ¶ 14.

Second, the SRO noted that "it is undisputed that the parents executed an enrollment contract with iBrain that included tuition costs, as well as the cost of a school nurse and 1:1 paraprofessional for the student, and further indicates that related services would be billed monthly at a specified hourly rate," but "[t]he hearing record does not include, however, any reliable evidence related to the parents' inability to 'front' the costs of the student's attendance at iBrain during the summer of the 2020-21 school year." *Id.* ¶¶ 15, 16. Thus, as Plaintiffs failed to show they lacked the financial resources to pay tuition costs, the SRO held that Plaintiffs did not have a right to relief requiring tuition payment directly to iBrain. *Id.* ¶¶ 17.

Accordingly, the SRO concluded that the equities did not favor Plaintiffs, and that they therefore were not entitled to direct payment of tuition costs to iBrain for the 2020 summer session and instead ordered DOE to reimburse Plaintiffs the cost of iBrain tuition reimbursement reduced by $2,000.00. *See id.* ¶ 14, 17.

Plaintiffs subsequently filed the Complaint, dated November 9, 2021 (ECF No. 1) in this federal action, seeking review of the SRO's Decision pursuant to the Individuals with Disabilities Education Act ("IDEA"). Def's Responses, ¶ 35. By Notice dated March 21, 2022,

Plaintiffs seek summary judgment on their claims and an order reversing the SRO's decision and awarding them direct funding in full of the tuition and related services for the 2020 summer session. *See also* Complaint, ¶ 6. For the reasons set forth more fully below, the Court should deny Plaintiffs' motion, grant Defendants' cross-motion, and dismiss the Complaint.

## STANDARD OF REVIEW

### A. Generally

A plaintiff who brings an IDEA action is essentially asking the court to appraise the validity of a state review officer's decision in the underlying administrative proceeding. To assess the correctness of the administrative decision, the district court must conduct an independent review of the underlying record and determine if Plaintiffs are entitled to relief. *Walczak*, 142 F.3d at 129.

The scope of a court's review of a state administrative decision under the IDEA, however, is "circumscribed." *See, e.g.*, *M.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 138 (2d Cir. 2013); *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2802 (2013). That is, federal courts "are expected to give 'due weight' to state administrative proceedings" because "the judiciary generally lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *M.S. v. Yonkers Bd. of Educ.*, 231 F.3d 96, 102 (2d Cir. 2000) (internal quotation marks and citations omitted).

Federal courts should accord a particularly high level of deference to determinations made by state administrators where those determinations require the special expertise of the administrative official in matters such as the substantive adequacy of an IEP or competing educational policy concerns. *See, e.g.*, *Rowley*, 458 U.S. at 208; *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 244-46 (2d Cir. 2012); *T.P. v. Mamaroneck Union Free Sch. Dist.*, 554

F.3d 247, 252 (2d. Cir. 2009); *Cerra*, 427 F.3d at 195 ("We have not hesitated to vacate district court opinions where the district court erred in substituting its judgment for that of the agency experts and the hearing officer.") (internal quotation marks and citations omitted).

"The SRO is required to render a carefully considered opinion; not a perfect one." *F.B. v. N.Y.C. Dep't of Educ.*, 923 F. Supp. 2d 570, 581 (S.D.N.Y. 2013) (internal quotations omitted). A district court "'must defer to the reasoned conclusions of the SRO as the final state administrative determination.'" *See, e.g.*, *R.E.*, 694 F.3d at 189 (quoting *M.H.*, 685 F.3d at 246). In other words, "[o]nly where the SRO's factual findings are not 'reasoned [or] supported by the record' is deference inappropriate." *K.L. v. N.Y.C. Dep't of Educ.*, No. 11-3733, 2012 U.S. Dist. LEXIS 124460, at *24, 2012 WL 4017822 (S.D.N.Y. Aug. 23, 2012) (quoting *M.H.*, 685 F.3d at 241), *aff'd*, 530 F. App'x 81 (2d Cir. 2013).

The party appealing an SRO's decision to the federal level bears the burden of proof in establishing that the SRO's decision is not entitled to deference by "calling [a court's] attention to an SRO's specific errors in law, fact, or reasoning." *See, e.g.*, *M.W.*, 725 F.3d at 139; *M.H.*, 685 F.3d at 225 n.3. Even if the party satisfies that burden, however, the underlying conclusions of the SRO need not automatically be rejected.

**B.    Application of the Burlington/Carter Test**

In addressing Prong I of the *Burlington/Carter* test – whether the school district offered the student an appropriate program for a given school year – a court is to consider two sub-factors: (1) whether the student's IEP was developed according to the IDEA's procedural requirements, and (2) whether the educational plan set forth in the IEP was reasonably calculated to confer educational benefit on the student. *Walczak*, 142 F.3d at 129 (citing *Rowley*, 458 U.S. at 206-207).

Prong II of the *Burlington/Carter* test concerns the appropriateness of a parental placement, but it need not be reached if the threshold question – namely, whether the school district's program was appropriate – is answered in the affirmative. *See, e.g.*, *M.C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000); *Walczak*, 142 F.3d at 134. If a court does reach Prong II, federal review focuses on whether the parents have satisfied their burden of proving that the private school's program was reasonably calculated to confer educational benefit on the student. *Frank G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 459 F.3d 356, 364 (2d Cir. 2006) (citing *Rowley*, 457 U.S. at 207); *Muller v. Comm. on Special Educ.*, 145 F. 3d 95, 105 (2d Cir. 1998)).

Prong III requires that equitable considerations be resolved in the parents' favor in order to warrant an award of tuition funding. *C.F. v. N.Y. City Dep't of Educ.*, 746 F.3d 68, 82 (2d Cir. 2013); *Frank G.*, 459 F.3d at 363-64. A request for tuition funding for a unilaterally-chosen private school may be reduced or denied "upon a judicial finding of unreasonableness with respect to actions taken by the parents." 20 U.S.C. § 1412(a)(10)(C)(iii)(III); *cf. Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007) ("If parents meet their burden [under Prongs I and II], the district court enjoys broad discretion in considering equitable factors relevant to fashioning relief.") (citing *Florence Cnty. Sch. Dist. Four*, 510 U.S. at 16. Courts must start with a presumption that equitable considerations favor the school district. *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009) ("In considering the equities, courts should generally presume that public-school officials are properly performing their obligations under IDEA."); *see also R.E.*, 694 F.3d at 185 (the parents bear the burden of proving that the equities are in their favor).

**ARGUMENT**

**POINT I**

**THE SRO CORRECTLY CONCLUDED THAT
THE EQUITIES DO NOT FAVOR
PLAINTIFFS**

Here, the first and second prongs of the *Burlington/Carter* test are not in dispute –

the parties acknowledge for the purpose of their respective motions that the SRO concluded that

DOE conceded that it did not offer the Student a FAPE for the 2020-2021 school year under

Prong I and that the Parents' unilateral placement of the Student at iBrain for the 2020 summer

session was appropriate. The issue before this Court concerns the third prong of

*Burlington/Carter* only, namely, whether the equities weigh in favor of any reduction of the

tuition reimbursement or any award of direct funding.

**A.     The SRO Properly Applied a Reduction to Plaintiffs' Tuition Reimbursement**

Under Prong III, a request for tuition reimbursement for a unilaterally chosen

private school may be reduced or denied "upon a judicial finding of unreasonableness with

respect to actions taken by the parents." 20 U.S.C. § 1412(a)(10)(C)(iii)(III).  Parents bear the

burden of establishing that the equities favor them, *R.E.*, 694 F.3d at 185, and "[i]n considering

the equities, courts should generally presume that public-school officials are properly performing

their obligations under IDEA."  *Forest Grove*, 557 U.S. at 247.  Furthermore, where parents

"mak[e] it impossible to conform to IDEA's mandate, equitable considerations *demand* that the

court deny reimbursement."  *N.R. v. N.Y.C. Dep't of Educ.*, No. 07-9648, 29 U.S. Dist. LEXIS

27273, at *17, 2009 WL 874061 (S.D.N.Y. Mar. 31, 2009) (emphasis added).

Behavior that is unreasonable under the statute includes the parents having "no

plans to entertain the . . . options the [school district] presented," and instead "selecting [a private

placement] without first fulfilling [the parental obligation under the IDEA] to work together with

school officials to find a placement that [is] appropriate." *See, e.g.*, *Tucker v. Bay Shore Sch. Dist.*, 873 F.2d 563, 567 (2d Cir. 1989); *J.P. v. N.Y. City Dep't of Educ.*, No. 10-3078, 2012 U.S. Dist. LEXIS 12762, at *39-41 (E.D.N.Y. Feb. 2, 2012); *Thies v. N.Y. City Bd. of Educ.*, No. 07-2000, 2008 U.S. Dist. LEXIS 11354, at *9-10 (S.D.N.Y. Feb. 4, 2008); *Bettinger v. NYC Bd. of Educ.*, No. 06-6889, 2007 U.S. Dist. LEXIS 86116, at *27, 2007 WL 4208560 (S.D.N.Y. Nov. 20, 2007). As the Supreme Court has noted, school districts need not worry about being forced to reimburse parents who take actions unilaterally "*without first* endeavoring to cooperate with the school district. . . ." *See Forest Grove Sch. Dist.*, 557 U.S. at 246 (emphasis added).

In particular, the IDEA is clear that the "cost of reimbursement ***may be reduced or denied* –**"

> (I) if – (aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; ***or*** (bb) 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in item (aa) . . . .

20 U.S.C. § 1412(a)(10)(C)(iii)(I) (emphasis added). "Having considered the entire record, and accorded due weight to the SRO's findings," courts in the Second Circuit, "in [their] discretion," have time and time again concluded that the equities may warrant some reduction of the tuition reimbursement, and even sometimes in full, where plaintiffs' notice to DOE was late and therefore untimely under the IDEA. *Wood v. Kingston City Sch. Dist.*, No. 08-1371, 2010 U.S. Dist. LEXIS 102948, at *29, 30, 2010 WL 3907829 (N.D.N.Y. Sept. 29, 2010) ("[I]n view of plaintiffs' [five-business-day] delay in notifying the District, however, the Court, exercising its discretion, reduces the award of tuition reimbursement by ten percent.") (citing 20 U.S.C.

§ 1412(a)(10)(C)(iii)); *see, e.g., S.W. v. New York City Dep't of Educ.*, 646 F. Supp. 2d 346, 364 (S.D.N.Y. 2009) (denying tuition reimbursement because the plaintiff did not give written notice to the DOE that she was rejecting the public school placement and enrolling the student in a private school); *Carmel Cent. Sch. Dist. v. V.P.*, 373 F. Supp. 2d 402, 416 (S.D.N.Y. 2005) (declining to award tuition reimbursement where the parents "never had the slightest intention of allowing the child to be education in the public school, and did everything possible so that they could frustrate a timely review of [the child's] condition" before re-enrolling the child in a private school).

Here, Plaintiffs were required to provide timely notice to DOE so that it could be given the opportunity to provide a FAPE. It is undisputed, however, that they failed to comply with the requirements of 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb), which sets forth a basis for reducing or denying the cost of reimbursement. *See* Def's 56.1 Statement, ¶ 13. In fact, Plaintiffs did not provide DOE with written notice of their intent to remove the Student from the public school until June 29, 2020, just one business day before the start of DOE's 2020-2021 extended school year, and just five business days before unilaterally placing the Student at iBrain. *Id.*

Thus, Plaintiffs never provided the DOE an opportunity to consider amending the May 2020 IEP in light of Plaintiffs' concerns. By failing to timely provide the DOE with timely and adequate notice of any alleged faults in the IEP, Plaintiffs were uncooperative with the CSE process and obstructed the DOE from considering amending the May 2020 IEP in order to accommodate the parents' concerns. *See Forest Grove Sch. Dist.*, 557 U.S. at 247 ("[C]ourts [have] discretion to reduce the amount of a reimbursement award if the equities so warrant – for instance, if the parents failed to give the school district adequate notice of their intent to enroll the child in private school.").

Additionally, Plaintiffs' notice to DOE did not provide sufficient information to determine why Plaintiffs rejected the May 2020 IEP as the notice was vague and conclusory, stating only that the "program and placement offered cannot appropriately address [J.E.'s] educational needs" for the 2020-2021 school year. *See* Def's 56.1 Statement, ¶ 6. Thus, Plaintiffs violated both the express statutory requirements of the IDEA and New York State Education Law, and also violated the spirit of the IDEA by refusing to cooperate with the DOE to find an appropriate public school placement. *See M.C.*, 226 F.3d at 68 (tuition reimbursement is inappropriate when parents fail to cooperate with school officials to find an appropriate public school placement). Consequently, equitable considerations here preclude an award of full tuition reimbursement. *See Carmel*, 373 F. Supp. 2d at 415 (denying tuition reimbursement to parents where parents did not give notice to the CSE until after re-enrolling child in private school and where facts indicated that parents never seriously considered public school placement).

Although the IHO found that "the equities disfavor neither side," no deference should be afforded this finding. *See* Def's 56.1 Statement, ¶¶ 9, 10. The IHO failed to address that Plaintiffs provided inadequate notice under 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb). In fact, the IHO only discussed the equities in a single sentence, setting forth no factual support or analysis to support his finding. *See id.* ¶ 10. In contrast, the SRO reached his conclusions after appropriately determining, within his discretion and expertise to do so, that the equities do not favor Plaintiffs upon observing that they flagrantly failed to comply with the IDEA's 10-day notice requirement. *See id.* ¶¶ 11-14. Such conduct constitutes a failure to cooperate with the school district and thus precludes a full award of tuition reimbursement on equitable grounds. *See S.W.*, 646 F. Supp. 2d at 364. Nevertheless, rather than barring full tuition reimbursement –

which courts have done in other cases where plaintiffs' notice was untimely – the SRO here reasonably ordered a reduction of the tuition reimbursement of $2,000.00. *See id.* ¶ 14.

In their motion for summary judgment, Plaintiffs misconstrue the notice requirements under 20 U.S.C. § 1412(a)(10)(C). Plaintiffs argue that the standard only allows for a reduction or denial of a funding award if the parents did not also inform the IEP team that they were rejecting the placement proposed by the public agency at the most recent IEP meeting. *See* Plaintiffs' Memorandum of Law in Supp. of Mot. for Summary Judgment, dated March 21, 2022 (ECF No. 20) (hereinafter "Pls' SJ Mem."), at p. 14. Relying on this incorrect reading of the statute, Plaintiffs argue that funding cannot be reduced or denied because they advised DOE at the May 2020 IEP meeting that Plaintiffs would prefer to stay at iBrain and not have a District 75 ("D75") school recommendation. *Id.*

However, the statute – read in full – allows a SRO to reduce or deny a tuition reimbursement award if the parents did not inform the IEP team they were rejecting the placement at the most recent IEP meeting ***or*** if they did not provide 10 business days written notice prior to removing the student from the school district. 20 U.S.C. § 1412(a)(10)(C)(iii)(I). Here, Plaintiffs failed to do the latter, and the SRO – plainly reading the statute and correctly applying the notice requirements – properly found that such failure warranted a reduction of the tuition reimbursement award. Plaintiffs' argument thus fails. In any event, at the IEP meeting, Plaintiffs did not sufficiently state any concerns about the recommended program and services or their intent to enroll their child in a private school at public expense; rather, the May 2020 IEP indicates that Plaintiffs merely expressed their preference that the Student remain at iBrain and did not want J.E. to be placed in the previously recommended D75 school but were "willing to

visit any placement offered." Def's 56.1 Statement, ¶ 5. Such conduct cannot be construed as providing DOE adequate and timely notice as required under 20 U.S.C. § 1412(a)(10)(C)(iii)(I).

Plaintiffs also improperly read clause (iii)(I) as precluding the reduction or denial of tuition reimbursement because DOE allegedly failed to timely issue notice to Plaintiffs of its recommended placement for the Student (*i.e.*, Prior Written Notice and School Location Letter). Pls' SJ Mem., at p. 15. In doing so, however, Plaintiffs neglect to read the clause in full, which clearly sets forth the exception to the notice requirements: that the cost of reimbursement may not be reduced based on parents' failure to provide such notice to DOE if "the parents had not received notice [] of the notice requirement in clause (iii)(I) – that is, their obligation to inform the DOE at the IEP meeting or "ten business days prior to the removal of the child from the public school" that the parents were "rejecting [the DOE's proposed] placement" and "inten[ded] to enroll their child in a private school at public expense." *See* 20 U.S.C. § 1412(a)(10)(C)(iii)(I). In their moving papers, Plaintiffs do not set forth any argument that suggests that their failure to timely provide the required notice to DOE was due to their being unaware of the notice requirements. *See generally* Pls' SJ Mem. Thus, this argument, too, lacks merit.

Accordingly, this Court should give deference to the SRO's sound, thorough, and well-reasoned decision and find that the Plaintiffs' failure to provide timely notice of their intent to unilaterally place their child in private school at public expense pursuant to 20 U.S.C. § 1412(a)(10)(C)(iii)(I) is sufficient grounds to reduce Plaintiffs' tuition reimbursement for the 2020 summer session here. *R.E.*, 694 F.3d at 189; *J.L. v. N.Y. City Dep't of Educ.*, No. 15-1200, 2016 U.S. Dist. LEXIS 162328, at *27, 2016 WL 6902137 (S.D.N.Y. Nov. 22, 2016).

**B.      The SRO Properly Found that Plaintiffs Failed to Meet Their Burden and Were Not Entitled to Direct Funding**

Equitable considerations warrant denying or reducing a parent's request for relief where there is no proof that the parents have a legal obligation to pay for the services for which they seek payment. *See Mr. & Mrs. A v. New York City Dep't of Educ.*, 769 F. Supp. 2d 403, 406 (S.D.N.Y. 2011) ("*Mr. & Mrs. A*"). In *Mr. and Mrs. A*, the court noted that "the school district *could be* required, under [20 U.S.C.] § 1415, 'to pay the tuition directly' to the private school': once the *Burlington* prerequisites relative to a non-approved private school are met, and a parent shows that his or her financial circumstances eliminate the opportunity for unilateral placement in the non-approved school . . . ." *Mr. & Mrs. A*, 769 F. Supp. 2d at 426 (quoting *Connors v. Mills*, 34 F. Supp. 2d 795, 805-06 (N.D.N.Y. 1998)) (emphasis added). Indeed, though courts have held that the IDEA may authorize a retroactive direct tuition remedy, such as direct payment to the private school, it is only granted in appropriate circumstances where Plaintiffs meet their burden of demonstrating financial inability. *See id.* at 428 ("Where . . . parents lack the financial resources to 'front' the costs of private school tuition, and in the rare instance where a private school is willing to enroll the student and take the risk that the parents will not be able to pay tuition costs – or will take years to do so – parents who satisfy the *Burlington* factors have a right to retroactive direct tuition payment relief."). In sum, direct payment to the private school is an equitable remedy that is available to parents who prove an inability to afford tuition costs out-of-pocket. *See, e.g.*, *id.*; *see also Connors*, 34 F. Supp. 2d at 806 (denying award of direct funding to school where the plaintiff presented no evidence that she was unable to front the tuition costs).

Here, during the administrative proceedings, Plaintiffs failed to demonstrate a lack of financial resources – or introduce any evidence concerning their financial state – that

would justify an award of direct payment to iBrain. In his analysis, SRO notes that "[t]he hearing record does not include [] any reliable evidence related to the parents' inability to 'front' the costs of the student's attendance at iBrain during the summer of the 2020-21 school year." Def's 56.1 Statement, ¶ 16. Indeed, Plaintiffs did not testify at the hearing. *See* Certified Copy of the Administrative Hearing Record, State Review Office Appeal No. 21-125 (ECF No. 11) (hereinafter "Admin. Record"), at R0159-195 (Transcripts). The SRO notes that Plaintiffs' executed an enrollment contract with iBrain, which sets out a base tuition that included the cost of academic programming, a school nurse, and a 1:1 paraprofessional for J.E., and further indicates that related services were not part of the base tuition and would be billed monthly at a specified hourly rate. Despite executing such contract, however, Plaintiffs did not set forth any facts demonstrating financial hardship, nor any arguments in their closing brief, Verified Request for Review, or their moving papers in the instant action, that they did in fact meet this burden but that the SRO failed to consider such facts. *See* Def's 56.1 Statement, ¶ 18; *see generally* Pls' SJ Mem. Indeed, Plaintiffs do not point to any evidence in the record that demonstrates that Plaintiffs attempted, much less met their burden of showing that they lack the financial resources to front the costs of private school tuition.

Instead, Plaintiffs argue in their moving papers that the SRO misapplied the holding of *Mr. & Mrs. A* and ignored the factual differences between the instant case and *Mr. & Mrs. A*, which Plaintiffs assert "does not stand for the proposition that Parent's ability to pay the private school tuition has a bearing on the equitable considerations when adjudicating the substantive merits of the case." *See* Pls' SJ Mem. at p. 18. Not only is Plaintiffs' reading of *Mr. & Mrs. A* erroneous, but Plaintiffs also fail to explain what factual differences exist between the two cases that render *Mr. & Mrs. A* inapplicable to the instant case and that entitle Plaintiffs to

direct funding here. *See Mr. & Mrs. A*, 769 F. Supp. 2d at 428; *see also E.M. v. N.Y. City Dep't of Educ.*, 758 F.3d 442, 453 (2d Cir. 2014) (affirming the plain reading of *Mr. & Mrs. A* that only "in appropriate circumstances, a direct-payment remedy" is provided) (internal quotation marks omitted).

Thus, the SRO correctly applied the court's analysis of *Mr. & Mrs. A* and appropriately determined that Plaintiffs have not made any showing of financial hardship to warrant an award of direct funding of the tuition costs for the 2020 summer session at iBrain.

## <u>CONCLUSION</u>

For all of these reasons, Defendants respectfully request that the Court deny Plaintiff's motion for summary judgment, grant Defendants' cross-motion, dismiss the Complaint in its entirety, and grant Defendants such other and further relief as the Court shall deem just and proper.

Dated:    April 20, 2022
        New York, New York

                **HON. SYLVIA O. HINDS-RADIX**
                Corporation Counsel of the
                 City of New York
                *Attorney for Defendants*
                100 Church Street
                New York, New York 10007
                (212) 356-0885

            By:         /s/ Min Kyung Cho
                Min Kyung Cho
                Assistant Corporation Counsel